UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
------------------------------x
                              :
CARMEN CRUZ o/b/o R.F.        :    Civ. No. 3:14CV01331(SALM)
                              :
v.                            :
                              :
CAROLYN W. COLVIN             :    October 1, 2015
                              :
------------------------------x
```

<u>**RULING ON CROSS MOTIONS**</u>

Plaintiff Carmen Cruz ("plaintiff"), on behalf of R.F. ("RF"),[1] brings this action pursuant to 42 U.S.C. §405(g), seeking review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her application on behalf of RF for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. Plaintiff has moved for an order reversing the decision of the Commissioner. [Doc. #10].

For the reasons set forth below, plaintiff's Motion for Order Reversing the Decision of the Commissioner [**Doc. #10**] is **GRANTED, in part**. Defendant's Motion for an Order Affirming the Decision of the Commissioner [**Doc. #13**] is **DENIED.** This matter is remanded for further proceedings in which the ALJ reconsiders the administrative record, weighs the evidence, holds another

---

[1] Plaintiff is RF's biological mother. (Certified Transcript of the Record, compiled on November 15, 2014 (hereinafter "Tr.") Tr. 34, 202).

hearing if necessary, and issues a new decision in which he explains his findings with specificity.

## I.   PROCEDURAL HISTORY

Plaintiff, on behalf of RF, filed an application for SSI on February 24, 2011, alleging disability as of February 1, 2011. (Tr. 120-28). Plaintiff's claim was denied initially and on reconsideration. (Tr. 82-88). On September 24, 2012, plaintiff, RF and their attorney appeared before Administrative Law Judge ("ALJ") Roy P. Liberman for an administrative hearing. (Tr. 30-57, 88-111, 114-19). On November 28, 2012, ALJ Liberman found that RF was not disabled, and denied the claim. (Tr. 111-33). Plaintiff sought Appeals Council review, which was denied. (Tr. 1-6, 11). The case is now ripe for review under 42 U.S.C. §405(g).

Plaintiff timely filed this action for review and for an order reversing the decision of the Commissioner. [Doc. #10]. On appeal, she asserts the following:

1. The ALJ's determination that RF's impairments were not functionally equivalent to the Listings is unsupported by substantial evidence (step three determination); and

2. The ALJ erred by failing to consider whether RF's impairments met the requirements of Listing 112.02.

2

As set forth below, the Court concludes that ALJ Liberman failed to address all of the evidence before him, and failed to explain the weight given to probative exhibits. Accordingly, the Court finds that his decision is not supported by substantial evidence.

## II.  STANDARD OF REVIEW

The review of a social security disability determination involves two levels of inquiry. First, the court must decide whether the Commissioner applied the correct legal principles in making the determination. Second, the court must decide whether the determination is supported by substantial evidence. Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998) (citation omitted). Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion; it is more than a "mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The reviewing court's responsibility is to ensure that a claim has been fairly evaluated by the ALJ. Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983) (citation omitted).

The Court does not reach the second stage of review -- evaluating whether substantial evidence supports the ALJ's conclusion -- if the Court determines that the ALJ failed to

apply the law correctly. See Norman v. Astrue, 912 F. Supp. 2d 33, 70 (S.D.N.Y. 2012) ("The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial evidence."). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

"[T]he crucial factors in any determination must be set forth with sufficient specificity to enable [a reviewing court] to decide whether the determination is supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984) (alteration added)(citation omitted). The ALJ is free to accept or reject the testimony of any witness, but a "finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988) (citation omitted). "Moreover, when a

finding is potentially dispositive on the issue of disability, there must be enough discussion to enable a reviewing court to determine whether substantial evidence exists to support that finding." Johnston v. Colvin, No. 3:13CV00073(JCH), 2014 WL 1304715, at *6 (D. Conn. Mar. 31, 2014) (internal citations omitted).

It is important to note that in reviewing the ALJ's decision, this Court's role is not to start from scratch. "In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012) (citations and internal quotation marks omitted). "[W]hether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports the ALJ's decision." Bonet ex rel. T.B. v. Colvin, 523 F. App'x 58, 59 (2d Cir. 2013)(citations omitted).

**III. SSA LEGAL STANDARD**

Disability for children (individuals under the age of 18) is defined by the Social Security Act, 42 U.S.C. §1382c(a)(3)(C)(i), as a "medically determinable physical or

5

mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months."

To determine if a child claimant has sustained a disability within the meaning of the Act, the ALJ follows a three-step process. First, the ALJ must determine if and when the child last engaged in substantial gainful activity. See 20 C.F.R. §416.924(b). Second, if, as in most cases, the child has not engaged in substantial gainful activity, the ALJ must determine whether the child has an impairment or combination of impairments that is severe within the meaning of the regulations. See 20 C.F.R. §416.924(c). Third, if the child has a severe impairment or combination of impairments, the ALJ must determine whether the child's impairment(s) meets or functionally equals the severity of any disorder in the Listings. See 20 C.F.R. §416.924(d).

To determine if an impairment or combination of impairments functionally equals a listed impairment, the ALJ must find that the impairment or impairments result in a "marked" limitation in two domains of functioning or an "extreme" limitation in one area of functioning. See 20 C.F.R. §416.926a(a). A child

experiences a "marked" limitation where the impairment(s) seriously interferes with his ability to independently initiate, sustain, or complete activities. See 20 C.F.R. §416.926a(e)(2)(i). An "extreme" limitation occurs where the child's impairment(s) interferes very seriously with his ability to independently initiate, sustain, or complete activities. See 20 C.F.R. §416.926a(e)(3)(i). The six domains for an ALJ to consider are the child's ability to: (1) acquire and use information; (2) attend to and complete tasks; (3) interact with and relate to others; (4) move about and manipulate objects; (5) care for oneself; and the child's (6) health and physical well-being. See 20 C.F.R. §416.926a(b)(1)(i)-(vi). To evaluate the severity of the impairment in these six domains, the ALJ measures the child's independent ability to function against that of non-impaired children of the same age. See 20 C.F.R. §416.926a(b).

## IV.  THE ALJ'S DECISION

Following the three step evaluation process, ALJ Liberman concluded that RF was not disabled under the Social Security Act. (Tr. 24-25). The ALJ initially determined that RF was an adolescent on both the application date and the date of the hearing decision. (Tr. 18). At step one, the ALJ found that RF

7

had not engaged in substantial gainful activity at any relevant time. Id. At step two, ALJ Liberman found that RF had the severe impairments of a learning disability and asthma. Id.

At step three, the ALJ found that RF's impairments did not meet or medically equal a Listed impairment. (Tr. 18). The ALJ specifically considered Listings 103.03 (asthma) and 12.05 (intellectual disability). Id. ALJ Liberman also considered RF's level of functioning across the six domains, and found that RF had less than a marked limitation in each domain. (Tr. 18-24). Ultimately, the ALJ found RF not disabled since February 24, 2011, the date of RF's application. (Tr. 24-25).

## V.   DISCUSSION

Plaintiff asserts two arguments in support of reversal. The Court will address each in turn.

### A.   <u>Step Three Determination</u>

Plaintiff argues that the ALJ erred at step three by finding that RF's impairments were not functionally equivalent to the Listings. Plaintiff contends that the ALJ's findings that RF had less than marked limitations in acquiring and using information and attending and completing tasks are not supported by substantial evidence. Defendant argues that the ALJ's findings in these two domains are supported by substantial

evidence.

The regulations provide that where a child claimant's impairments do not meet any listing, the Commissioner will determine whether the impairments "result[] in limitations that functionally equal the listings." 20 C.F.R. §416.926a(a). This is further defined as follows:

> By "functionally equal the listings," we mean that your impairment(s) must be of listing-level severity; i.e., it must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain, as explained in this section. We will assess the functional limitations caused by your impairment(s); i.e., what you cannot do, have difficulty doing, need help doing, or are restricted from doing because of your impairment(s). When we make a finding regarding functional equivalence, we will assess the interactive and cumulative effects of all of the impairments for which we have evidence, including any impairments you have that are not "severe."

Id.; see also Pollard v. Halter, 377 F.3d 183, 190 (2d Cir. 2004). A claimant has a "marked" limitation if her "impairment(s) interferes seriously with [her] ability to independently initiate, sustain, or complete activities." 20 C.F.R. §416.926a(e)(2)(i). A claimant has an "extreme" limitation if her "impairment(s) interferes very seriously with [her] ability to independently initiate, sustain, or complete activities." 20 C.F.R. §416.926a(e)(3)(i). A "marked" limitation "is 'more than moderate' but 'less than extreme.'" 20 C.F.R.

§416.926a(e)(2)(i). Additionally, the regulations provide that
the Social Security Administration will find a child under 18 to
have a "marked" limitation if she has a "valid score that is two
standard deviations or more below the mean, but less than three
standard deviations, on a comprehensive standardized test
designed to measure ability or functioning in that domain, and
[her] day-to-day functioning in domain-related activities is
consistent with that score." 20 C.F.R. §416.926a(e)(2)(iii).

### 1. Acquiring and Using Information

According to the regulations promulgated by the Social
Security Administration, "acquiring and using information"
concerns how well an individual acquires or learns information
and how well he uses the information he has learned. See 20
C.F.R. §416.962a(g). For adolescents (age 12 to attainment of
age 18), the regulations provide that, in middle and high
school, an adolescent without an impairment should be able to:

> continue to demonstrate what [he has] learned in
> academic assignments (e.g., composition, classroom
> discussion, and laboratory experiments). [He] should
> also be able to use what [he has] learned in daily
> living situations without assistance (e.g., going to
> the store, using the library, and using public
> transportation). [He] should be able to comprehend and
> express both simple and complex ideas, using
> increasingly complex language (vocabulary and grammar)
> in learning and daily living situations (e.g., to
> obtain and convey information and ideas). [He] should
> also learn to apply these skills in practical ways
> that will help you enter the workplace after [he]

> finish[es] school (e.g., carrying out instructions,
> preparing a job application, or being interviewed by a
> potential employer).

20 C.F.R. §416.926a(g)(2)(v). Social Security Ruling ("SSR") 09-3p explains that this domain considers more than just assessments of cognitive ability as measured by intelligence tests, academic achievement instruments, or grades in school. SSR 09-3P, 2009 WL 396025, at *2 (S.S.A. Feb. 17, 2009).

> Although we consider formal school evidence (such as
> grades and aptitude and achievement test scores) in
> determining the severity of a child's limitations in
> this domain, we do not rely solely on such measures.
> We also consider evidence about the child's ability to
> learn and think from medical and other non-medical
> sources (including the child, if the child is old
> enough to provide such information), and we assess
> limitations in this ability in all settings, not just
> in school.

Id. at *3.

Here, the ALJ found that RF had a less than marked limitation in acquiring and using information. (Tr. 20). He explained:

> The claimant has language delays and has been held
> back in school multiple times (Exhibit 4F). The
> claimant's resource room teacher for his special needs
> has reported that he has a very serious problem in
> this domain, but that when he is given extra time to
> accomplish tasks he can complete them independently
> (Exhibit 25E). These factors establish limitations in
> this domain of functioning, but his ability to
> independently complete assigned tasks, with extra time
> indicates that he does not have marked limitations.

(Tr. 20). Prior to reaching this conclusion, the ALJ summarized plaintiff's and RF's testimony, and discounted the opinion of consultative examiner Annemarie Murphy, Ph.D. (Tr. 19-20). Instead, he relied upon a number of psycho-educational evaluations, the majority of which significantly predate RF's onset date of February 1, 2011. Compare Tr. 19 (ALJ's decision: "Psycho-educational evaluations have revealed that the child has General Intelligence Test scores of 77, placing him in the low range of intellectual abilities (Exhibit 24E)."), with Tr. 328-400 (Exhibit 24E, comprised of 73 pages of Bridgeport Public Schools documentation, including Individualized Education Programs ("IEPs"), psycho-educational re-evaluations, special education teacher reports, and other consultations, only three pages of which date to 2010, and the remainder from 2005 to 2009).

The exhibit upon which the ALJ explicitly relied when making his findings with respect to this domain, 25E, consists of a Teacher Questionnaire dated September 18, 2012, authored by RF's case manager (the "2012 Teacher Questionnaire"), RF's 2012 Connecticut Mastery Test ("CMT") Scores, and his 2012 IEP. (Tr. 401-36). In the domain of acquiring and using information, RF's case manager, as reflected in the 2012 Teacher Questionnaire,

found that RF had "a very serious problem" in four areas:
understanding school and content vocabulary; reading and
comprehending written material; comprehending and doing math
problems; and learning new material. (Tr. 402). The case manager
found RF had "a serious problem" in three areas: providing
organized oral explanations and adequate descriptions;
expressing ideas in written form; and recalling and applying
previously learned material. (Tr. 402). The case manager further
commented that, "[RF] receives extra help. When work is modified
he can complete tasks independently but needs extra time." Id.
The ALJ relied on this last sentence in finding that RF had less
than marked limitations in the domain of acquiring and using
information. See Tr. 20. The ALJ failed, however, to note the
other conflicting evidence of record – including evidence within
that same exhibit - which does not support this finding.

Indeed, the Court's review of the record indicates that the
ALJ failed to address a substantial amount of pertinent and
conflicting evidence in the record. Although "[t]he ALJ need not
have reconciled every conflict in the record ... 'crucial
factors in any determination must be set forth with sufficient
specificity to enable us to decide whether the determination is
supported by substantial evidence.'" McClain v. Barnhart, 299 F.

Supp. 2d 309, 323-24 (S.D.N.Y. 2004) (citations omitted). In
that regard, "[a] court 'cannot ... conduct a review that is
both limited and meaningful if the ALJ does not state with
sufficient clarity the legal rules being applied and the weight
accorded the evidence considered.'" Hamedallah ex rel. E.B. v.
Astrue, 876 F. Supp. 2d 133, 142 (N.D.N.Y. 2012)(citation
omitted).

Substantial evidence is evidence that a reasonable mind
would accept as adequate to support a conclusion; it is more
than a "mere scintilla." Richardson, 402 U.S. at 401 (quoting
Consolidated Edison Co., 305 U.S. at 229); see also Hamedallah,
876 F. Supp. 2d at 141 ("Substantial evidence has been
interpreted to mean 'such relevant evidence as a reasonable mind
might accept as adequate to support a conclusion.'" (citation
omitted)). "Where the weight of the evidence, however, does not
meet the requirement for substantial evidence or a reasonable
basis for doubt exists as to whether correct legal principles
were applied, the ALJ's decision may not be affirmed."
Hamedallah, 876 F. Supp. 2d at 141 (citing Johnson, 817 F.2d at
986).

The ALJ's decision does not sufficiently address or weigh
the pertinent and conflicting evidence of record. Moreover,

substantial evidence does not support his conclusion that RF is less than markedly impaired in the domain of acquiring and using information. For example, the ALJ did not explicitly address the results of RF's 2012 CMT, in which RF "scored at the Below Basic level on the Mathematics test, ... Reading test and ... on the Writing test." (Tr. 411).[2] RF scored 180 out of 400 on the mathematics test, which demonstrated "limited knowledge of grade-level content ... limited conceptual understanding, computational skills and problem-solving skills[.]" Id. RF scored 171 out of 400 on the reading test, which demonstrated "a very limited ability to read and respond to grade-appropriate literary, informational and reading-to-perform-a-task texts and require significant assistance to complete most reading tasks ... Students at this level demonstrate a very limited ability to analyze words in context to construct meaning from grade-appropriate text." (Tr. 412). RF scored 169 out of 400 on the writing portion of the CMT, which demonstrated "a limited ability to communicate [his] ideas in writing." Id.

---

[2] "Overall scores in mathematics, reading, and writing are reported in scale score units. The scale scores for each content area range from 100 to 400. Within the scale-score range, five performance levels have been established for each content area. These five levels are: Advanced, Goal, Proficient, Basic, and Below Basic." (Tr. 410).

The ALJ also failed to address or adequately consider forty-seven pages of RF's school records (Exhibit 13E, Tr. 225-71). Included amongst these records is a Teacher Questionnaire dated November 22, 2011 (the "November 2011 Teacher Questionnaire"), which was completed by RF's resource room teacher/case manager. (Tr. 226-36). Notably, the November 2011 Teacher Questionnaire reported RF had "a serious problem" to "a very serious problem" in all aspects of the domain of acquiring and using information. (Tr. 227); see, e.g., id. (finding RF had "a very serious problem": comprehending oral instructions; understanding school and content vocabulary; reading and comprehending written material; comprehending and doing math problems; expressing ideas in written form; and recalling and applying previously learned material). The record also contains a Teacher Questionnaire dated April 10, 2011 (the "April 2011 Teacher Questionnaire"), which noted fewer restrictions in the domain of acquiring and using information. See Tr. 309. However, the ALJ failed to discuss the April 2011 Teacher Questionnaire, to reconcile the conflicts between the April 2011 and November 2011 Teacher Questionnaires, or to explain the weight, if any, given to this evidence.

Also included in Exhibit 13E is a summary and score report

16

of tests administered to RF in March 2011, designed to evaluate his reading, mathematics, written language, oral language and academic knowledge. (Tr. 244-48). At the time of this testing, RF was 13.2 years old and attending the sixth grade. (Tr. 244). The following is a summary of the tests administered, RF's age equivalency as a result of his scores on each test, and the range in which his scores fell:

| TEST ADMINISTERED | AGE EQUIVALENCY | SCORE RANGE |
|---|---|---|
| Word-Letter Identification | 9.1 | low range |
| Reading Fluency | 8.5 | low range |
| Story Recall | 7.9 | low range |
| Understanding Directions | 7.7 | low range |
| Calculation | 8.1 | very low range |
| Math Fluency | 8.0 | very low range |
| Spelling | 7.3 | very low range |
| Writing Fluency | 8.4 | low range |
| Passage Comprehension | 7.9 | very low range |
| Applied Problems | 10.5 | average |
| Writing Samples | 9.9 | very low range |
| Broad Reading | 9.7 | low range |
| Broad Math | 9.4 | low range |
| Broad Written Language | 7.11 [sic] | very low range |
| Total Achievement | 8.7 | very low range |

(Tr. 244-47). The examiner summarized the testing results as follows:

> [RF's] oral language skills are low when compared to the range of scores obtained by others at his age level. [RF's] overall level of achievement is very low. His academic skills are in the low range for his age. [RF's] ability to apply academic skills is within the low range. His fluency with academic tasks is within the very low range.

17

> When compared to others at his age level, [RF's]
> standard scores are low in broad reading, brief
> reading, broad mathematics, brief mathematics, and
> written expression. His standard scores are very low
> (compared to age peers) in math calculation skills,
> broad written language, and brief writing.

(Tr. 248). Notably, in the areas of Calculation, Math Fluency,

Passage Comprehension, Broad Written Language, and Total

Achievement, RF's "performance yielded a percentile rank of 1.0,

meaning that [RF] was able to perform the tasks involved [in the

respective test] as well as 1 percent of the 13.2 year olds who

took the test as part of a national standardization sample."

(Tr. 245-47). In the area of spelling, RF scored a percentile

rank of 0.2. (Tr. 245). Nowhere does the ALJ acknowledge these

test results, which is significant because "[a] score at or

below the first percentile satisfies the SSA's regulatory

definition of a marked limitation, since the bottom 2.3 percent

of any population is more than two [standard deviations] below

the mean." McClain, 299 F. Supp. 2d at 325 (citing Duran v.

Barnhart, No. 01CV8307(GWG), 2003 WL 103003, at *10 (S.D.N.Y.

Jan. 13, 2003)).[3]

---

[3] It also bears noting that the report of consultative examiner,
Annemarie Infantino Murphy, Ph.D., to which the ALJ ascribed
"little probative value," (Tr. 20), is largely consistent with
the evidence summarized above. For example, using the Wechsler
Child Intelligence Scale, RF's general cognitive ability scored
in the "Extremely Low range of intellectual functioning,"
meaning that "[h]is overall thinking and reasoning abilities

Also included amongst the documents comprising Exhibit 13E, and not addressed by the ALJ, is a 2011 City of Bridgeport Department of Psychological Services Report of Re-Evaluation which similarly weighs against the ALJ's findings. (Tr.239-43). For example, cognitive functioning measured using the WISC-IV test indicated that RF's overall intellectual functioning was in the "[b]orderline range," with his scores in verbal comprehension and perceptual reasoning also falling in the "[b]orderline range." (Tr. 240). RF's scores in the working memory index fell within the "[l]ow [a]verage range," and in the "[e]xtremely [l]ow range" in the category of processing speed index.[4] (Tr. 240).

---

exceed[ed] those of approximately 0.1% of children his age." (Tr. 475). RF scored in this range on the verbal comprehension, perceptional reasoning, working memory and processing speed portions of the test. (Tr. 475-77). Administering the WRAT-3 test when RF was 13, Dr. Murphy found RF to function at a second grade level in mathematics, and a third grade level in reading. (Tr. 477). Dr. Murphy further diagnosed RF on Axis 2 with "Mild Mental Retardation." (Tr. 478).

[4] "The Borderline range is 70-79 [out of a standard score mean of 100]. Students in this range may significantly struggle in the classroom ... Below 70 would be the Extremely Low range indicating a possibility of an Intellectual Disability or Mental Retardation (the scores alone will not diagnose)." Understanding Test Scores, SCHOOL PSYCHOLOGIST FILES, http://schoolpsychologistfiles.com/testscores/ (last visited September 16, 2015).

Finally, the ALJ also failed to discuss, or otherwise consider, Bridgeport Public School records for the relevant time frame. See Exhibit 13E at Tr. 251-71, Exhibit 7E at 173-88. For example, in the 2010 and 2011 school years, RF was not "age appropriate" in language arts or math. (Tr. 259). His special education intervention also increased from a total of six hours of specialized instruction per week in 2010 (Tr. 174), to 7.5 hours per week of language arts in the "resource room," plus 3.75 hours per week of math in the "resource room." (Tr. 257).[5]

In light of this other substantial evidence of record, it was not enough for the ALJ to merely conclude that RF's "ability to independently complete assigned tasks, with extra time indicates that he does not have marked limitations." (Tr. 20). Indeed, it is well settled that

> "crucial factors in any determination must be set forth with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." Ferraris, 728 F.2d at 587. See, e.g., Arnold v. Sec[.] of Health, Educ[.], and Welfare, 567 F.2d 258 (4th Cir. 1977) (noting that the Secretary must have analyzed all evidence and explained the weight given to probative exhibits in order for the court to find his decision supported by substantial evidence); Williams v. Heckler, [No. 83 Civ. 8610-CSH,] 1986 WL 1440[,] at *4 (S.D.N.Y. [Jan.

---

[5] The ALJ also did not consider a Child Function Report, completed by plaintiff, which reported, inter alia, that RF could not: read and understand sentences in comics and cartoons; tell time, add and subtract numbers over 10; or understand money/make correct change. (Tr. 138).

> 29,] 1986) ("On this record, the Court cannot itself determine which clinical findings, diagnoses and medical opinions were relevant to the ALJ's determination that plaintiff retained the full capacity to do sedentary work. Consequently, I cannot tell if that determination was supported by substantial evidence.").

McClain, 299 F. Supp. 2d at 323-24. "While each of [the above-recited] facets of [RF's] impaired functioning may not, in isolation, amount to a marked or [extreme] limitation, in combination, they cannot summarily be dismissed as less-than-marked, which is what the ALJ's [] decision has done." McClain, 299 F. Supp. 2d at 325 (citing Encarnacion ex rel. George v. Barnhart, 191 F. Supp. 2d 463, 474 (S.D.N.Y. 2002) (two less-than-marked limitations in one domain may cumulatively contribute to the finding of a marked or extreme limitation)). Accordingly, the ALJ's failure to consider the relevant evidence in the case record is error, and necessitates remand:

> An ALJ has a legal duty to consider "all evidence" in the case record before making a determination as to whether a claimant is eligible for disability benefits. 20 C.F.R. §416.920(a)(3); see Sutherland v. Barnhart, 322 F. Supp. 2d 282, 289 (E.D.N.Y. 2004) ("It is not proper for the ALJ to simply pick and choose from the transcript only such evidence as supports his determination, without affording consideration to evidence supporting the plaintiff's claims. It is grounds for remand for the ALJ to ignore parts of the record that are probative of the plaintiff's disability claim."); see also Lopez v. Sec'y of Dep't of Health & Human Servs., 728 F.2d 148, 150-51 (2d Cir. 1984) ("We have remanded cases when it appears that the ALJ has failed to consider relevant

and probative evidence which is available to him.").
Hamedallah, 876 F. Supp. 2d at 142.

The ALJ's reliance on evidence of record which
significantly predates the alleged disability onset date,
February 1, 2011, was also error, especially when the ALJ failed
to reconcile that evidence with more recent reports. The records
upon which the ALJ relied largely date from 2005 to 2009, and as
such, are not "necessarily material because [they] predate[] the
alleged disability onset date[.]" Briscoe v. Astrue, 892 F.
Supp. 2d 567, 582 (S.D.N.Y. 2012) (citing Folio v. Astrue, No.
CV 06-2700-PHX-EHC, 2008 WL 3982972, at *6 (D. Ariz. Aug. 20,
2008) (medical evidence that predates disability onset period is
ordinarily not relevant to evaluating claimant's disability));
see also 20 C.F.R. 416.912(d) ("Before we make a determination
that you are not disabled, we will develop your complete medical
history for at least the 12 months preceding the month in which
you file your application unless there is a reason to believe
that development of an earlier period is necessary[.]"). In that
regard, the Court similarly rejects the defendant's arguments
that the ALJ's findings in this domain are supported by
substantial evidence given that defendant similarly relies on
stale evidence. See Doc. #13-1 at 7-8 (citing largely to test

results and school records from 2005, 2006, 2007 and 2008). To
the extent that the defendant cites to a select few relevant
records and test results in support of the Commissioner's
argument, the Court agrees with plaintiff's statement that such
records "present a much more serious level of impairment in this
domain than acknowledged by the defendant." [Doc. #14 at 3].

"In light of the ALJ's failure to acknowledge or address
pertinent, conflicting evidence in the record and his failure to
adequately explain the basis for his finding of a less-than-
marked limitation in the domain of acquiring and information[,]
[his decision] cannot stand." McClain, 299 F. Supp. 2d at 325-
26. The Court, however, "will not engage in an analysis that is
more appropriately performed by the ALJ[,]" Hamedallah, 876 F.
Supp. 2d at 147, and therefore remands this matter for further
proceedings in which the ALJ reconsiders the administrative
record, weighs the evidence, holds another hearing if necessary,
and issues a new decision in which he explains his findings with
greater specificity.

### 2.   Attending and Completing Tasks

In the second domain of attending and completing tasks, the
ALJ found RF had less than a marked limitation. (Tr. 21)
Plaintiff argues that this finding is not supported by

substantial evidence.

The Social Security regulations provide that this domain considers how well an individual is able to focus and maintain attention, how well he begins, carries through, and finishes activities, including the pace at which he performs them, and the ease with which he can change the activities. See 20 C.F.R. §416.926a(h). For adolescents (age 12 to attainment of age 18), the regulations provide that, in a claimant's "later years of school," an adolescent without an impairment should be able to:

> pay attention to increasingly longer presentations and discussions, maintain [] concentration while reading textbooks, and independently plan and complete long-range academic projects. [He] should also be able to organize [his] materials and to plan [his] time in order to complete school tasks and assignments. In anticipation of entering the workplace, [he] should be able to maintain [his] attention on a task for extended periods of time, and not be unduly distracted by [his] peers or unduly distracting to them in a school or work setting.

20 C.F.R. §416.926a(h)(2)(v). Social Security Ruling 09-4p further explains that this domain covers only the mental aspects of task completion. SSR 09-4P, 2009 WL 396033, at *2 (S.S.A. Feb. 18, 2009).

Here, the ALJ found that RF had a less than marked limitation in attending and completing tasks. (Tr. 21).

> The claimant is noted to be forgetful and he has to be reminded to complete tasks (Exhibit 4F). However, he does complete chores at home and completes his

24

homework with help from his mother. As noted above,
the claimant's resource room teacher for his special
needs has reported that he has a very serious problem
in this domain, but that when he is given extra time
to accomplish tasks he can complete them independently
(Exhibit 25E). Although the claimant frequently makes
mistakes in his schoolwork, he "has no problems
redoing his work." Again, these factors establish
limitations in this domain of functioning, but his
ability to independently complete assigned tasks, with
extra time indicates that he does not have marked
limitations.

(Tr. 21). Again, the Court finds that the ALJ erred in reaching

this finding because he did not address other pertinent and

conflicting evidence of record.

For example, and as noted above, there is no indication

that the ALJ considered either the April 2011 or November 2011

Teacher Questionnaires which found RF had "an obvious problem"

to "a very serious problem" in various categories in the domain

of attending to and completing tasks. (Tr. 228, 308); see, e.g.,

Tr. 308 (April 2011 Teacher Questionnaire, which reported RF had

"a serious problem" organizing his school work and personal

items and working at a reasonable pace/finishing on time, and "a

very serious problem" completing class/homework assignments, and

completing work accurately); Tr. 228 (November 2011 Teacher

Questionnaire, which reported RF had "a serious problem"

focusing long enough to finish an assigned activity or task,

refocusing to a task when necessary, carrying out multi-step

instructions and organizing his school work and personal items,
and a "very serious problem" working at a reasonable
pace/finishing a task on time).

The ALJ also did not address, or attempt to reconcile with
his findings, a Child Function Report, completed by plaintiff
which reported, inter alia, that RF could not keep busy on his
own, finish tasks he started, complete homework, or complete
chores. (Tr. 141). Similarly, the ALJ did not address two
Activities of Daily Living reports, which stated, inter alia,
that RF did not perform household chores when asked or manage
his personal hygiene and grooming without help. (Tr. 169, 221).
The ALJ also failed to address records from Bridgeport Public
Schools identifying the numerous accommodations provided to RF
which related to the domain of attending to and completing
tasks. For example, in 2011 and 2012, RF's accommodations
included, in pertinent part: prior notice of tests; extra time
for tests and written work; providing RF one paper at a time;
preferential seating; clear work area; reviewing directions and
repeating instructions. (Tr. 268, 430).

The ALJ's consideration of the 2012 Teacher Questionnaire
noted that RF "has no problems redoing his work." (Tr. 21).
However, the ALJ did not take into consideration the remainder

of that report's comments:

> [RF] needs extra time to complete tasks. Work is often
> checked. When error is pointed out, he has no problems
> redoing his work. [RF's] asthma is a problem during
> the winter months [and] when it is humid. <u>During these
> times he becomes lethargic, very withdrawn and unable
> to complete his work</u>.

(Tr. 403). Defendant primarily relies on the 2012 Teacher

Questionnaire as "constitut[ing] substantial evidence in support

of the ALJ's decision." [Doc. #13-1 at 9]. The Court disagrees

in light of the other conflicting evidence of record, none of

which the ALJ addressed or otherwise tried to reconcile with his

findings. Accordingly, because the ALJ failed to address all of

the evidence before him, and because he did not explain the

weight given to probative exhibits, the Court finds his decision

is not supported by substantial evidence, and therefore remands

this matter for proceedings consistent with this ruling. <u>Arnold</u>,

567 F.2d at 258.

**B.**   <u>**Consideration of Listing 112.02**</u>

Last, plaintiff argues that the ALJ erred by failing to

consider Listing 112.02 at step three of the sequential

evaluation. This Listing addresses Organic Mental Disorders,

described as: "Abnormalities in perception, cognition, affect,

or behavior associated with dysfunction of the brain." 20 C.F.R.

Pt. 404, Subpt. P App. 1, Listing 112.02. To meet the

27

requirements of this Listing, the child must satisfy both the paragraph "A" and "B" criteria. Id. Paragraph "A" requires the "[m]edically documented persistence of at least one of the following: ... Impairment of cognitive function, as measured by clinically timely standardized psychological testing[.]" Id. at Listing 112.02(A)(9). Paragraph "B" requires at least two marked impairments in one of the following categories: age-appropriate cognitive/communicative function; age-appropriate social functioning; age-appropriate personal functioning; or difficulties in maintaining concentration, persistence or pace. Id. at Listing 112.02(B)(2)(a)-(d).

Plaintiff asserts that RF meets paragraph "A" in light of his "long history of psychological testing[,]" and that this matter should be remanded for the ALJ to consider the paragraph "B" requirements of Listing 112.02. [Doc. #10-1 at 35]. Defendant asserts that, "[t]hough not identical, the requirements for part B [of Listing 112.02] are very similar to the requirements for functional equivalence using the six domains of function ... Thus, even though the ALJ did not explicitly analyze the part B criteria ... he thoroughly considered the evidence in assessing whether RF's impairment was functionally equivalent to a Listing." [Doc. #13-1 at 10-11].

28

The Court disagrees with defendant's characterization of the ALJ's decision. Indeed, for reasons previously stated, the ALJ failed to adequately consider the evidence in assessing whether RF's impairments were functionally equivalent to a Listing. Accordingly, on remand, the ALJ will consider whether RF meets Listing 112.02, and specifically set forth his findings in a new decision.[6] See, e.g., Hamedallah, 876 F. Supp. 2d at 145 ("[T]he Court finds that the ALJ's failure to mention or discuss Listing 112.05E necessitates remand.").

## VI. CONCLUSION

For the reasons set forth herein, plaintiff's Motion for Order Reversing the Decision of the Commissioner [**Doc. #10**] is **GRANTED, in part.** Defendant's Motion for an Order Affirming the Decision of the Commissioner [**Doc. #13**] is **DENIED.**

This matter is remanded for further proceedings in which the ALJ reconsiders the administrative record, weighs the evidence, holds another hearing if necessary, and issues a new decision in which he explains his findings with specificity.

---

[6] The Court further notes that at the administrative hearing, the ALJ asked of plaintiff's counsel whether he thought RF suffered from "mild mental retardation," to which Attorney Spilka replied, "Well, it's either that or organic brain disorder." (Tr. 37). Additionally, the state reviewing non-examining physicians considered Listing 112.02 in their opinions. (Tr. 67, 77).

The Clerk's Office is instructed that, if any party appeals to this Court the decision made after this remand, any subsequent social security appeal is to be assigned to the Magistrate Judge who issued the Ruling that remanded the case.

This is not a recommended ruling. The parties consented to proceed before a United States Magistrate Judge [Doc. #17] on August 26, 2015, with appeal to the Court of Appeals.

SO ORDERED at New Haven, Connecticut this 1st day of October 2015.

                                    **/s/**
                                    _____
                                    HON. SARAH A. L. MERRIAM
                                    UNITED STATES MAGISTRATE JUDGE